CHARLES F. WINSON GEMS, INC., Respondent, v D. GUM-
BINER, INC., Appellant, and MURRAY SCHWARTZMAN,
Respondent.

First Department, February 23, 1982

### APPEARANCES OF COUNSEL

*Alexander Yunis* for appellant.

*Arthur I. Winard* of counsel (*Mark L. Rosenfeld* with him
on the brief; *Arthur I. Winard, P. C.,* attorney), for respon-
dent.

### OPINION OF THE COURT

LUPIANO, J.

Carl Fazio, the owner of a cat's eye gem ring, delivered
the ring to H. W. Beattie & Sons, a jewelry dealer, in
November, 1976, for the purpose of securing an offer for its
purchase. Beattie, in turn, sent the ring to plaintiff
Charles F. Winson Gems, Inc. (hereinafter Winson), also a
jewelry dealer, for the purpose of securing an offer. Winson
then delivered the ring to defendant D. Gumbiner, Inc., a
dealer, on or about February 10, 1977, pursuant to the
term of a written all-risk memorandum agreement which
provided in pertinent part that the ring "is delivered to
[Gumbiner] at [Gumbiner's] risk from all hazards * * *

From the time the property is received by [Gumbiner] until it is actually re-delivered to and received by [Winson] at its premises, [Gumbiner] bear[s] the risk of loss or damage *howsoever caused;* and [*Gumbiner*] *will be legally liable* to [Winson] *to the extent of the amount stated below for any loss or damage which may occur,* whether caused by [Gumbiner] or not, and whether occurring through [Gumbiner's] negligence or not" (emphasis supplied). This all-risk memorandum prepared by Winson and signed on behalf of Gumbiner set the value of the ring initially at $22,000, which amount was subsequently reduced by Robert E. McCormick, the general manager of Winson, to $21,500.

On or about April 16, 1977, Gumbiner consigned the ring to defendant Murray Schwartzman without informing Winson or obtaining its consent. Fazio demanded return of his ring and this compelled Winson, in turn, to demand the return of the ring of defendant Gumbiner on or about May 2, 1977. The ring was not returned. Fazio instituted an action against Winson on or about October 26, 1977 for replevin or conversion. Subsequently Winson commenced the instant action for replevin or conversion against Gumbiner and Schwartzman in February, 1978. Gumbiner appeared, but never answered. A joint trial of Fazio's action against Winson and Winson's action against Gumbiner and Schwartzman was ordered.* At trial, Gumbiner's president testified and was again informed that the corporation was in default and should obtain an attorney (the attorney who had theretofore put in an appearance for Gumbiner having been permitted to withdraw). In consequence of the trial, Fazio obtained judgment against Winson for conversion of the ring for the actual value of the ring, to wit, $34,820, and plaintiff Winson in this action was awarded default judgment against Gumbiner for the same amount.

Gumbiner moved to vacate the default judgment of $34,820 with interest from May 2, 1977 (the date Winson demanded return of the ring of defendant Gumbiner) on the ground that it was entered three years after the default and alleged lack of notice of inquest to it. Gumbiner also argued that the allegations of the complaint and the provi-

---

* The denial of summary judgment to Fazio in his action against Winson was affirmed on appeal (*Fazio v Winson Gems,* 66 AD2d 752).

sions of the all-risk memorandum limited its liability to the sum of $21,500 which amount it had already tendered to plaintiff Winson. Winson in opposition admitted that the sum of $21,500 had been deposited "in escrow" with its counsel during the period April 19, 1978 until January 17, 1980. The trial court denied Gumbiner's motion to vacate its default noting its advice to Gumbiner's president to obtain a lawyer for the corporation and the fact that Gumbiner's liability to Winson could not be properly embodied in a determination until the liability of Winson to Fazio was first decided. It was also noted that defendant through its president received ample notice of the default, the joint trial, and that plaintiff Winson was moving for entry of a default judgment. Gumbiner's president was at the joint trial and no formal notice of inquest was necessary.

Discretion is vested in the court under CPLR 3215 (subd [c]) to permit entry of default judgment subsequent to the expiration of one year from the date of the default. Such discretion was clearly not abused here. The repeated notices to defendant's president were notices to defendant Gumbiner. The trial constituted, in effect, an inquest insofar as Gumbiner was concerned. However, "[t]he most salient point here is that the defendant, by defaulting, does not admit damages. It is only liability which his default is deemed to admit. See McClelland v. Climax Hosiery Mills, 252 N.Y. 347 * * * (1930). Thus, the defaulting defendant can show up at the damages assessment and put in proof in mitigation of damages" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3215:6, p 866).

Two critical issues were presented at the joint trial respecting the amount of damages to be determined against Gumbiner, to wit, whether the loss suffered by Winson is to be fixed at the actual value of the ring or is to be limited by the value set forth in the all-risk memorandum of insurance and from which date does interest accrue for such loss — the date Gumbiner consigned the ring to Schwartzman without the knowledge or consent of Winson or the date of Winson's demand for return of the ring and the effect, if any, on the running of such interest by the

tender and payment by Gumbiner to Winson's counsel of the amount of $21,500.

It is clear on this record that the stated value on the all-risk memorandum is the acceptable measure of damages. (See *Lipschutz v Gordon Jewelry Corp.*, 373 F Supp 375, 380-381, 387-389.) The *Lipschutz* case which supports defendant Gumbiner's position was concerned with New York law as it applied to an all-risk memorandum involving consignments of diamonds. In the instant matter the all-risk memorandum is clear and unambiguous and its construction presents a question of law for the court to determine. It unequivocally limited Gumbiner's liability to the extent of the amount set forth therein for any loss or damages which may occur. The amount agreed to by the parties in the all-risk memorandum is $21,500.

Defendant Gumbiner, in consigning the ring to defendant Schwartzman on or about April 16, 1977 without the consent of Winson in derogation of the terms of the all-risk memorandum, exercised an unauthorized assumption of dominion over the ring which act constituted an act of conversion as to plaintiff Winson (see 10 NY Jur, Conversion, §§ 25, 26). Such unauthorized use of the property constituted a conversion of the property (10 NY Jur, Conversion, § 31). Interest is to be computed from this date. However, there is the admitted fact that at some point in time, defendant Gumbiner in some manner paid $21,500 to plaintiff Winson. This payment might well have constituted a tender sufficient to stop the running of interest. The record does not permit of a reasoned determination of such issue. Consequently the issue of the amount of interest is remanded for determination at a new inquest (see *Schutzer v Berger*, 40 AD2d 725; *Wine Antiques v St. Paul Fire & Mar. Ins. Co.*, 40 AD2d 657), unless the parties stipulate to the amount of interest.

The oral request by defendant-appellant D. Gumbiner, Inc., to have promissory notes dated January 13, 1978, the affidavit of McCormick verified March 1, 1978 and the certified transcript of said defendant's president made part of the record herein is denied.

The order of the Supreme Court, New York County (Leff, J.), entered June 22, 1981, which denied defendant

D. Gumbiner, Inc.'s, motion to vacate the default judgment against it in the sum of $34,820 with interest from May 2, 1977, should be modified, on the law, and the motion granted to the extent of reducing the judgment to the amount of $21,500 with interest from April 16, 1977 and the issue of the amount of interest remanded for determination at a new inquest unless the parties stipulate to the amount, and, as so modified, should be affirmed, without costs and disbursements.

KUPFERMAN, J. P., SANDLER and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County, entered on June 22, 1981, unanimously modified, on the law, and the motion to vacate a default judgment granted to the extent of reducing the judgment to the amount of $21,500 with interest from April 16, 1977 and the issue of the amount of interest remanded for determination at a new inquest unless the parties stipulate to the amount, and, as so modified, affirmed, without costs and without disbursements. The application by the appellant to submit additional papers is denied.